UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00516-FDW-DSC

| | |
|---|---|
| PENN NATIONAL SECURITY INSURANCE COMPANY, ) ) ) Plaintiffs, ) ) vs. ) ) PULTE HOME COMPANY, LLC f/k/a ) PULTE HOME CORPORATION d/b/a DEL ) WEBB; HOOPAUGH GRADING ) COMPANY, LLC; And HOOPAUGH ) GRADING, LLC, ) ) Defendants. ) | ORDER |

THIS MATTER is before the Court on Pulte Home Company, LLC's ("Pulte") Motion to Dismiss or in the Alternative to Stay. (Doc. No. 8). Also pending before the Court are two Motions for Summary Judgment, (Doc. Nos. 21, 23), filed by Pulte and Plaintiff Penn National Security Insurance Company ("Plaintiff") respectively. All motions have been fully briefed by the parties and are ripe for review. In the motion to dismiss, Pulte asks this Court to abstain from exercising jurisdiction during the pendency of an underlying state court action. For the reasons stated herein, Pulte's Motion to Dismiss or in the Alternative to Stay is DENIED, and the parties' Motions for Summary Judgment are GRANTED IN PART AND DENIED IN PART.

1

## I. BACKGROUND[1]

### A. The Parties

Plaintiff is a liability insurer for Defendants Hoopaugh Grading Company, LLC and Hoopaugh Grading (together "Hoopaugh"). (Doc. No. 9 at 2). Plaintiff is domiciled in Pennsylvania. (Id. at 15). Hoopaugh, domiciled in North Carolina, was a sub-contractor assisting primarily in site preparation for construction of a residential development known as Sun City Carolina Lakes. (Id. at 2). Defendant Pulte, domiciled in Michigan (Id. at 15), formally known as Pulte Home Corporation, and doing business as Del Webb, was the general contractor and developer on the same project (Id. at 2).

### B. Allegations

Pursuant to the terms of a Master Trade Agreement (the "Agreement") with Pulte, Hoopaugh was required to obtain additional insurance coverage in favor of Pulte. (Doc. No. 9, Ex. 1 at 17). Plaintiff issued a series of general liability and umbrella insurance policies (the "Policies") to Hoopaugh from 2013 to 2020. (Doc. No. 9 at 2). Hoopaugh also obtained insurance policies through Westfield National Insurance Co. ("Westfield") and through Cincinnati Insurance Co. ("Cincinnati"). (Id. at 3). Neither Westfield nor Cincinnati are named as parties to the current action.

After construction was complete, several property owners discovered alleged defects in lot preparation and foundations of their properties. (Doc. No. 14 at 3). On September 4, 2019, property owners Peter A. Bernstein and Elizabeth G. Bernstein, Individually and as Class Representatives,

---

[1] In exercising its discretion consistent with the Fourth Circuit rulings addressing motions to dismiss based on the Declaratory Judgment Act, this Court looks beyond the allegations in the complaint and considers the full record. See e.g., Hartford Cas. Ins. Co. v. BB & T Fin. Corp., 131 F. Supp. 2d 752, 753 (W.D.N.C. 2001). See also Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994).

filed suit in South Carolina against Pulte seeking damages for the defects. (Id.). Pulte removed that action to the United States District Court for the District of South Carolina and filed a Motion to Compel Arbitration. (Id.). That case is currently stayed pending arbitration. Bernstein et al v. Pulte Home Company LLC, 19-cv-02805-JFA, (D.S.C. August 10, 2021) (hereinafter, "Underlying Action").

On September 25, 2019, claiming "additional insured" status as required by the Agreement and under Plaintiff's Policies, Pulte demanded Plaintiff defend and indemnify Pulte in the Underlying Action. (Doc. No. 9, Ex. 6 at 2). In a letter dated June 16, 2020, Plaintiff accepted the defense of Pulte as an additional insured as outlined in the Policies and assigned counsel to defend Pulte. (Doc. No. 9, Ex. 7 at 1). Plaintiff claims Pulte has refused to provide sufficient information to determine the scope of coverage and also precluded the appearance of counsel provided by Plaintiff in the Underlying Action.

In its Complaint here, Plaintiff seeks a declaration of the parties' rights and obligations under the Policies in relation to the Underlying Action. Specifically, Plaintiff requests a declaration stating Pulte is not entitled to coverage under the Policies as an additional insured, or alternatively if Pulte is covered, Plaintiff's obligations are limited to covered damages during the policy periods and under the limitations set out in the Policies. (Doc. No. 1 at 11-12).

On October 14, 2020, Pulte filed a separate action in the Court of Common Pleas for Lancaster County, South Carolina, against Plaintiff and Hoopaugh, as well as eight other contractors and over twenty insurers (hereinafter, "Pulte's State Action"). (Doc. No. 9, Ex. 10). In that action, Pulte seeks a declaration that Pulte had additional insured status and coverage under

3

Case 3:20-cv-00516-FDW-DSC   Document 33   Filed 08/27/21   Page 3 of 14

all relevant policies. (Id.). On the same day, Pulte filed the Motion to Dismiss or in the Alternative to Stay now before this Court. (Doc. No. 8).

## II. STANDARD OF REVIEW

### A. Declaratory Judgment

Pulte's Motion asks this Court to dismiss Plaintiff's Complaint on two grounds: (1) this action represents an incomplete and ineffective method for determining the rights and obligations of the parties and should be dismissed in favor of the pending state court action; and (2) the Complaint fails to name all necessary and indispensable parties. (Doc. No. 9 at 6).

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Act, however, gives the court the discretion to decline issuing the judgment. Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421 (4th Cir. 1998). The Fourth Circuit has established two standards of guidance for a district court's discretionary judgment over an insurer's request for declaratory judgment on coverage issues while the underlying litigation against its insured is pending in state courts. Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994) (abrogated on other grounds by Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257-87 (4th Cir. 1996)).

First, the court must consider the general utility of the relief sought, asking whether it will: (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Nautilus Ins. Co., 15 F.3d at 375.

Second, the court must also balance the considerations of federalism, efficiency, and

4

comity traditionally contemplated when deciding whether to exercise jurisdiction over state-law claims amid parallel litigation in state courts. Id. at 377. When considering federalism, efficiency, and comity, the Fourth Circuit has explained a court should evaluate the following: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issue more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary entanglement between the state and federal courts; and (4), whether the federal action is mere "procedural fencing." Id.

### B. Joinder of Necessary and Indispensable Parties

Rule 12(b)(7) provides a party may assert the defense of failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 outlines the circumstances in which a person must be joined as a necessary party to a case. "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if either:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). When a necessary party cannot be joined, the court must then determine whether the party is indispensable under Rule 19(b). In determining whether a party is "indispensable," the court weighs the following factors:

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's

5

> absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). If found indispensable, the court must dismiss the action. Determinations as to necessity and indispensability are left to the sound discretion of the trial court. See Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir.1980). Dismissal of a case for nonjoinder is a drastic remedy and should be employed sparingly. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C. Inc., 210 F.3d 246, 250 (4th Cir.2000) (citing Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917–18 (4th Cir.1999)).

### III. ANALYSIS

#### A. Declaratory Judgment

Pulte first contends it is within the discretion of this Court to dismiss the present action and this Court should exercise this discretion because a determination here would not provide a complete and effective determination of parties' rights and obligations.[2]

#### 1. State's Interest

Under the Nautilus factors, the court first turns to the strength of the state's interest in hearing the issues. Pulte argues South Carolina has a sufficiently compelling interest in having the present issues resolved in state court because: (1) South Carolina law applies to their interpretation; (2) South Carolina has a substantial interest in protecting in-state property interests covered by insurance policies; and (3) the issues presented are complex, uncertain, and better left to determination by the state. In determining the strength of the state's interest in having the issues at bar decided in a parallel state court action, it is not enough that they are governed by that state's

---

[2] The general utility standards are not disputed and so this Court contemplates only those considerations of federalism, efficiency, and comity as outlined in Nautilus. See Nautilus Ins. Co., 15 F.3d at 377.

law. Nautilus Ins. Co., 15 F.3d at 378. Exercise of the court's discretionary power to abstain from deciding state-law questions should be done "only when the questions of state law involved are difficult, complex, or unsettled." Id.

Although a finding that a particular state's law governs the issues is not dispositive, Pulte's first argument nevertheless incorrectly concludes South Carolina law should govern the issues at bar. Pulte appears to overlook the fact that the issues before this Court concern interpretation of the Policies between Plaintiff and Hoopaugh, not the Agreement between Pulte and Hoopaugh. Instead, North Carolina law will govern the interpretation.[3] As to Pulte's second argument, there is no doubt South Carolina maintains an interest in protecting property interests covered by insurance policies within its jurisdiction. South Carolina law expresses this interest. See S.C. Code Ann. § 38-61-10. However, the same might be said about any diversity suit filed in federal court, and this alone should not divest parties of their ability to bring suit here. This Court is likewise unconvinced by Pulte's argument that the present issues are complex or uncertain. Insurance policies such as those at bar and the policy triggers and time-on-risk provisions at issue are routinely interpreted by state and federal courts alike. These questions are not difficult, complex, or unsettled.

South Carolina's interest in resolving this action is thus not sufficiently strong to persuade this Court to decline jurisdiction on the matters before it.

---

[3] Because a federal court sitting in diversity must apply the choice of law rules of the forum state, North Carolina choice of law rules apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). North Carolina applies the principle of *lex loci contractus* meaning "the substantive law of the state where the last act to make a binding contract occurred . . . controls the interpretation of the contract." Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (N.C. 2000) (recognizing "an exception to this general rule where a close connection exists between this State and the interests insured by an insurance policy" and holding "the mere presence of the insured interests in this State at the time of an accident does not constitute a sufficient connection to warrant application of North Carolina law."). In this case, the last act was delivery of the policies to Hoopaugh in North Carolina. (See e.g., Doc. No. 1, Ex. 3-1 at 6).

7

Case 3:20-cv-00516-FDW-DSC   Document 33   Filed 08/27/21   Page 7 of 14

## 2. Judicial Efficiency

In evaluating efficiency concerns, courts should "focus primarily on 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]' that are already 'pending in the state court[s].'" Nautilus Ins. Co., 15 F.3d at 378 (quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)). The court must examine "the scope of the pending state court proceeding[s]" and "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Brillhart, 316 U.S. at 495.

Given the limited scope of the issues at hand, resolution in the Pulte State Action would prove no more efficient in settling the matters before this Court. Plaintiff requests a declaratory judgment specifically as to whether it is obligated to defend or indemnify Pulte, the application of particular limiting provisions in Plaintiff's Policies, and the impact of any failure of Pulte to comply with the Policies. Each of these issues is unique to Plaintiff's Policies and does not require the resolution of similar questions as to other potential insurers. Thus, while this Court finds no reason these issues could not be satisfactorily resolved in the Pulte State Action, all parties necessary to resolve these particular issues are present in this case. Furthermore, Plaintiff, a necessary party opposing this Motion to Dismiss and arguing resolution in this Court would be more efficient, does not appear to be amenable to resolution in the state action. (Doc. No. 14 at 9).

This Court is also convinced by Plaintiff's argument that if Pulte has further claims arising from the same evidence, they could be raised here as counterclaims. While this factor does not necessarily contemplate whether resolution would be more efficient in the federal action, this

8

further shows resolution in Pulte State Action would prove no more efficient. This Court finds this factor weighs against declining jurisdiction.

### 3. Unnecessary Entanglement

The third Nautilus factor requires consideration of "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'" Nautilus Ins. Co., 15 F.3d at 377 (quoting Mitcheson v. Harris, 955 F.2d 235, 239-40 (4th Cir. 1992)).

The parties agree there are overlapping issues within the present action and in the Pulte State Action. This would typically weigh in favor of dismissal. See Hartford Cas. Ins. Co. v. BB & T Fin. Corp., 131 F.Supp.2d 752, 755 (W.D.N.C. 2001). However, unlike previous cases where this Court has favored dismissal, the Pulte State Action was filed *after* the federal action. In addition, as stated above, the issues present in this case are unique to the Policies and to the relationship between Plaintiff and Pulte. Therefore, any overlapping issues only concern those parties currently before this Court. Where the Pulte State Action was filed second, and the overlapping issues involve only those parties before this Court, dismissal on this factor would allow parties to rob Plaintiff of an otherwise proper choice of forum. This Court finds this factor weighs against dismissal and reiterates if Pulte wishes to bring claims based on the same operative facts, they can move the Court to assert counterclaims in the present action.

### 4. Procedural Fencing

In addressing the possibility of procedural fencing, the Nautilus court contemplated first, whether the case was one that had been "raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." Nautilus Ins.

9

Case 3:20-cv-00516-FDW-DSC   Document 33   Filed 08/27/21   Page 9 of 14

Co., 15 F.3d at 380. Second, the Nautilus court considered whether there was any indication the case was filed in an effort to obtain a federal forum in a case not otherwise removable. Id.

Under the record currently before this Court, it does not appear Plaintiff has engaged in the kind of procedural fencing contemplated by the Nautilus court. Consistent with Nautilus, courts have recognized where both venues are proper, a party's choice alone to file in federal court rather than state court does not constitute procedural fencing. See e.g., NGM Ins. Co. v. Evans, 642 F. Supp. 2d 511, 517 (W.D.N.C. 2009); Hartford, 131 F. Supp. 2d at 755. Pulte suggests Plaintiff's awareness of a separate declaratory judgment action between Hoopaugh and Pulte shows Plaintiff engaged in procedural fencing by instead filing here. However, as Pulte states, Plaintiff is not a party to that action, nor are the same issues currently being addressed there. Pulte's assertion that the timing of Plaintiff's complaint shows procedural fencing is likewise unconvincing where Plaintiff's complaint followed Pulte's refusal to tender certain requested information and cooperate with the assigned counsel. Lacking ample evidence suggesting otherwise, this Court cannot conclude Plaintiff's decision to file in this forum was improperly motivated. Hartford, 131 F. Supp. 2d at 755. Therefore, this factor appears neutral and does not weigh heavily either way in considering dismissal of this action.

In considering each of the above four Nautilus factors, this Court finds none weigh in support of using its discretion to decline jurisdiction. Accordingly, on the first issue, Pulte's Motion to Dismiss is DENIED.

### B. Joinder of Necessary and Indispensable Parties

Pulte also asserts Plaintiff's failure to name Westfield and Cincinnati as necessary and indispensable parties to this action requires dismissal under Rule 19. Pulte further asserts even if

Westfield and Cincinnati are not necessary and indispensable, the carriers for other subcontractors on the project are also necessary and indispensable. Pulte argues the rules require dismissal because joinder of those parties, as plaintiffs or defendants, would destroy diversity.

Pulte has not met its burden of establishing Westfield and Cincinnati are necessary and indispensable parties here. As stated above, Plaintiff's request for declaratory judgment is limited in scope to the rights and duties of the parties as to whether Pulte is covered as an additional insured, whether specific limitations within the Policies should apply, and whether the Policies are implicated by any party's failure to comply. Given this limitation and under the current record, the absence of the other potential insurers does not preclude this Court's ability to offer complete relief on the issues presented. Additionally, no absent party would be impaired in their ability to protect their interests in the Pulte State Action. And finally, under the current record, absence of the parties named by Pulte would not subject Pulte, Hoopaugh, or Plaintiff to inconsistent obligations.

This Court further agrees with Plaintiff that the Builders Mutual and Schlumberger cases cited by Pulte do not control in this scenario. Builders Mut. Ins. Co. v. Dragas Mgmt. Corp., 497 F. App'x 313 (4th Cir. 2012); Schlumberger Indus., Inc. v. Nat'l Sur. Corp., 36 F.3d 1274 (4th Cir. 1994). Schlumberger raised concerns over a potential "whipsaw" effect of trying the cases separately, which the court found would have led to inconsistent judgments. Schlumberger, 36 F.3d at 1286. A determination here as to the effect of additional insured provisions within Plaintiff's Policies does not raise the same concern contemplated by these cases because each determination will be unique to the contractual language in the relevant policies.

Accordingly, on the issue of dismissal for failure to join necessary and indispensable parties, Pulte's Motion to Dismiss is DENIED.

## C.  Motions for Summary Judgment

Both Plaintiff and Pulte seek summary judgment as to the existence and scope of Plaintiff's duties to Pulte under the Policies.  The applicable standard of review for these motions is well-settled: "An award of summary judgment is only appropriate if the record demonstrates that 'there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'"  United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 312 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

One issue appears resolved from the parties' pleadings and undisputed evidence: Plaintiff has agreed it owes a duty to defend Pulte in the Underlying Action.  Summary judgment for Pulte on this limited issue is therefore appropriate.  Aside from this concession, the parties' evidence creates questions of fact as to the remaining issues, including whether either party has breached their obligations under the Policies, the relevant time periods—and related scope of coverage—under the Policies, and the duty to indemnify.  For example, Plaintiff argues that although it has agreed to defend Pulte in the Underlying Action, Pulte has refused Plaintiff's choice of defense counsel from appearing to defend in the underlying litigation and otherwise hindered—if not prohibited—Plaintiff's ability to fulfill its obligations.  Thus, Plaintiff contends Pulte has breached its obligations under the Polices and applicable law thereby relieving Plaintiff of any duty to defend or indemnify.  On the other hand, Pulte contends the evidence of Plaintiff's conduct conclusively establishes that Plaintiff has breached its duty to defend.

The Court disagrees with both sides.  While the Court is troubled by the evidence showing Pulte's refusal to allow the appearance of counsel provided by Plaintiff, the evidence falls short of foreclosing any question of fact to entitle Plaintiff to judgment as a matter of law for Pulte's alleged

12

breach of duty to cooperate or breach of other obligation under the Policies. Similarly, the evidence also demonstrates questions of fact as to Pulte's contentions that Plaintiff has breached its duty to defend.

Accordingly, as to Pulte's motion for summary judgment on the narrow question of whether Plaintiff owes a duty to defend, the Court GRANTS IN PART that portion of the motion such that no question of fact exists as to Plaintiff's duty to defend in the Underlying Action. The scope and limitations of that duty remain to be decided. The Court DENIES IN PART all other aspects of both motions because the Court concludes questions of fact exist as to whether either party has breached that duty, whether a duty to indemnify exists, and whether any limitations on coverage exists under the Policies.

### D.     Trial and Other Deadlines

Given this decision and the outstanding issues currently docketed for trial in a few weeks, the Court finds relevant the evidence in the parties' briefing regarding the status report filed in the Underlying Action. The Court takes judicial notice of the most recent status report as to the arbitration of the Underlying Action, which indicates mediation is currently set for October 2021, and if the case is not settled, the parties expect all final hearings concluded by March 2022. Bernstein et al, 19-cv-02805-JFA, Doc. No. 38, pp. 2-3 (August 10, 2021). The District Court of South Carolina has also indicated the Underlying Action will be dismissed with prejudice if arbitration is not completed by February 10, 2022. Bernstein et al v, 19-cv-02805-JFA, Text Order entered November 10, 2020. Given this relatively close timeframe for resolution of the Underlying Action, the Court will in its discretion *sua sponte* continue this case from the September 13, 2021,

13

trial term to the trial term beginning May 2, 2022. The parties' jointly-prepared pretrial submissions shall be due April 8, 2022. The Court will set a pretrial conference at a later date.

## IV. CONCLUSION

IT IS THEREFORE ORDERED, for the reasons stated above, Pulte's Motion to Dismiss (Doc. No. 8) is DENIED. The parties' Motions for Summary Judgment (Doc. Nos. 21, 23) are GRANTED IN PART and DENIED IN PART as provided herein.

IT IS FURTHER ORDERED that trial in this matter is CONTINUED from the September 13, 2021, trial term to the trial term beginning May 2, 2022. The parties' jointly-prepared pretrial submissions shall be due April 8, 2022.

IT IS SO ORDERED.

Signed: August 26, 2021

Frank D. Whitney
United States District Judge